May it please the Court, my name is Andrew Shapiro. I represent the appellant Sheldon Adelson. Your Honors, this was a defamation case in which the trial judge below agreed that there was enough evidence to go to the jury to support a finding of defamation, of defamation per se, of sufficient malice to overcome the public figure test, and of presumed damages. But the jury never reached those issues because the jury found that Mr. Adelson had not proven that the statement at issue had even been made. Now, the statement appeared in the Las Vegas Sun newspaper in quotation marks attributed to the defendant, Mr. Hananel. But the trial judge, as well as the magistrate judge, in what may have been understandable and good-faith efforts to limit what could otherwise have been a sprawling case, made rulings excluding important evidence and allowing improper statements by the defendant in such a way that the jury heard a one-sided version of events. And did any of the excluded documents establish that the defendant made the statements? The excluded documents were of two types. One was a yes or no. So the answer is they tend to establish it. I can't say that they definitively established it, but certainly for 401 purposes, they made it more likely than it would have been without the articles. Some of the documents were simply repeats or republications of the Sun article, correct? Yes, if one looks at the English translations. They are still relevant. And I – there are two things I think that are important to make clear about that. There were two articles that appeared in Macau papers in Portuguese. And this idea that they were simply identical was neither the basis for the objection of the other side nor the rationale that the judge gave for keeping them out. They would still be relevant even if they were simple reprints for the following reason. One of the hotly disputed issues in the trial was whether the defendant, Mr. Hananel, was reaching out to reporters and was undertaking a publicity campaign, a public relations campaign, rather. He denied that he had done that. And the fact that this article, even if it was a reprint of the Las Vegas Sun article, appeared in Macau just miraculously four days later in an area where Mr. Adelson does business, would have supported the argument of Mr. Adelson that Hananel was on a crusade against him and undermined his credibility when he said that he had not reached out to the Las Vegas reporter and made the remark. But one other important thing, the – if one looks at the articles in the Portuguese and they are in the excerpts of record we cited to them in our brief, they're plainly not identical reprints. For whatever reason, the translations that are appended to them, informal translations, appear to be identical. But even to the naked eye of a non-Portuguese speaker, they're not. So the argument could have been made to the jury. Well, look at these additional articles. They tend to make it more likely that Hananel made this comment. You know, there's also evidence in the record that those two newspapers, one of them is called Ponto Final, the other is – my pronunciation is poor, but it's Huj something – were newspapers to which Mr. Hananel had reached out before and newspapers which had quoted him directly. These are in the excerpts of record. Some of these articles are on pages 171 to 176 of the excerpts of record. There's a Ponto Final article that refers to a press release sent to them and that Hananel had sent them a letter. There are other articles that report speaking to Hananel or his publicist, Orly Katav. And the district court excluded the use of any other publications for state of mind or to show that Mr. Hananel had made the remark. Now – Were these different statements or were they just quoting the prior newspaper article? The articles republished – the articles in the excerpts of record from 161 to 184 were different primarily. And they show an ongoing relationship between Mr. Hananel and these newspapers. Two of the articles, as I was describing to Judge Hawkins, at least if you just read their informal translations, appear to have the same text as the Las Vegas Sun article. But they're relevant nonetheless for the reasons that I stated. Now, during this trial, which was a contentious one between two business partners who plainly have had a very emotional falling out, counsel for Mr. Hananel repeatedly tried to portray this as a battle between David and Goliath. And he tried to suggest that the current litigation was frivolous and that Adelson's allegations could be disregarded. And that was prejudicial, rising to the level of reversible error. I'm quoting here from page 132 of the excerpts of record. And this was what counsel for Mr. Hananel said. He said, ultimately, this is almost a ridiculous thing that brings us all here. But we're here. What is going on in this case is that for the past nine years, ever since 2001, Mr. Hananel has been trying to assert lawful rights against Mr. Adelson in Israel. And Mr. Adelson has gone on the counteroffensive. There have been a number of different suits. And this suit is the latest to deprive Mr. Hananel of his rights by causing Mr. Hananel to litigate not only in Israel, but in Boston and now in Nevada. Do you think that argument violated the lemonade? I absolutely think that it did. But I also want to make clear that our argument. The motion of lemonade, as I understand it, permitted counsel to refer generally to the fact that these two parties had had prior litigation. Is that correct? Yes. But clearly, Judge Reed, who was on the ground, felt that it was a violation. And I want to be clear, our argument here is not that it was contumacious and should be sanctioned, even if there had been no preexisting order. Our argument is that it was prejudicial and the jury shouldn't have heard it. And Judge Reed knew that. I have a quote here from pages 634 and 635 of the transcript, which I apologize I think are not in the excerpts of record, but it was at the end of the trial. And he said, A good many of the questions asked were I sustained the objections, which was improper on the part of defense counsel, but nonetheless we assume jurors will follow the court's instruction. I'm skipping down now. There's some ellipses because he's talking about the objections. He says, Even assuming the jury follows the court's rulings, which we fairly assume they will, I believe that the point was made very well. Nonetheless, I certainly respect the dissent. He's talking about Mr. Adelson's counsel, who was objecting. And it's not a simple problem. He knew it was not a simple problem. And there's a reason for that. Was that exchange in front of the jury? No. No. That exchange happened actually after the jury had gone out and they were, he was asking for any additional final objections. Did you move for a new trial? No. There was no mistrial motion or request for a new trial. There was a request. There were two requests for curative instructions, that the jury be able to hear the whole story rather than just one side, because, of course, the litigation turns out, unbeknownst to the jury, was started by Mr. Hananel in Israel. And the rights that he was claiming were rejected by the court in Boston. Now they've been rejected by the court in Israel as well. What is a jury going to think when it hears this? It's going to think that Mr. Adelson was trying to harass by bringing this case. And we lay it out in our briefs. But there were more than a dozen objections sustained on this basis. There were four consecutive in the opening. And there's a remarkable section of the direct examination, which we've excerpted in the excerpts of record, in which there are seven consecutive objectionable questions. And at the end, Counsel for Mr. Hananel just says, I have nothing further. You've got a minute and a half left. I'll reserve the rest of my time for rebuttal. Okay. We'll hear who opposes in counsel. Good morning, Your Honor. I may have pleased the Court. My name is Lawrence Green. I represent the Appellee, Moshe Hananel. Did you try this case? I did, Your Honor. Okay. What part of the grant of the motion in limine did you not understand? I understood the full motion in limine, Your Honor, and I followed it to a tee, Your Honor. The motion in limine. That's why the district court over and over and over again sustained objections? That is why, Your Honor, I asked questions that were part of the evidence of the record. You need not look any further than the stipulated exhibit, the affidavit of Moshe Hananel, stipulated exhibit by both parties in which Mr. Hananel outlined not one litigation. There wasn't one litigation over the past nine or ten years. There were multiple litigations, most of which were started by Mr. Adelson. Mr. Adelson. But it was clear, wasn't it, after the grant of the motion in limine that you were to refer, the parties were to refer only in summary fashion to the prior history of litigation. Isn't that correct? The motion in limine said that we could. Could you start with a yes or no response to my question? That is not quite correct, Your Honor. Tell me why it's not correct. It is not correct, Your Honor. You and I are going to get along a lot better if you wait until I finish my questions before you start your answer.  My apologies, Your Honor. Okay. Go ahead. That is not quite correct, Your Honor. The motion in limine precluded the parties from making any reference to the decision of the U.S. District Court, District of Massachusetts. There was nothing in the motion in limine, Your Honor, that precluded the parties from making reference to evidence that was before the U.S. District Court, District of Nevada. Did Judge Reed not understand the motion in limine? I'm sure that Judge Reed did understand the motion in limine, Your Honor. Why did he continually sustain objections? I felt that I needed to ask questions, Your Honor, based upon the evidence so that I could preserve my record on appeal. In evidence, Your Honor, was the affidavit of Moshe Hananel, which detailed all of the litigations, which showed that there had been a pattern of vexatiousness and oppressiveness by Mr. Adelson. And further, Your Honor, in evidence was cross-examination by trial counsel on behalf of Mr. Adelson of Mr. Hananel of five of the six litigations. I felt that I was completely entitled to ask, to refer in closing argument as to evidence in the record and that there was nothing in the motion in limine that precluded that. And quite frankly, had the ruling gone the other way, I think I would have a colorable appellate argument saying that the judge should not have sustained those objections. Was the jury ever told that when an objection is made and they were to disregard the question and any answer that they might think would be necessary? I believe that they were at the outset of the case, Your Honor. The judge read was very specific in that instruction. Didn't the plaintiff ask for that instruction to be repeated at the end? I do not believe he asked for that instruction to be repeated at the end, Your Honor. Now, if I can remind the Court here, this case was originally brought by Mr. Adelson against Moshe Hananel and John Doe's 1 through 50, claiming that Mr. Hananel had disseminated, published, or circulated a large number of false statements. And after three years of discovery, Mr. Adelson agreed through counsel that the case was limited to one statement found in the sixth paragraph of a seven-paragraph article in the Las Vegas Sun. He dropped his claim for civil harassment. Based upon this one statement, he testified at trial that he had sustained a $36.5 billion loss. He testified at that at his deposition. At trial, he said, yes, I said that at my deposition, but that was a joke. The statement, Your Honor, was not made by Mr. Hananel. He was misquoted. The statement was nevertheless true. The statement was true because Mr. Hananel was legally blind. The Israeli government had issued an officially blind certificate. And the statement was true because Mr. Adelson had indeed been trying to deprive Mr. Hananel of his rights. Indeed, on my examination of Mr. Adelson, which was not objected to, Mr. Adelson testified that he was hoping and expecting one day in time that Mr. Hananel would run out of money in connection with the litigation. That was his statement. And the citation is at page 29 of our brief. The notion, Your Honor, that Mr. Hananel said anything to these two other publications, which opposing counsel admits at page 10 of his brief were verbatim republications is just absurd. Your client admitted talking to the Sun reporter. That's correct. He admitted talking to the Sun reporter. He did not – he was not the one who initiated that communication. It was initiated by the Sun reporter. He denies having talked to him. I only asked you a simple question, and you can answer it with a yes or no. Your client admitted that he talked to the Las Vegas Sun reporter. Yes or no? That is correct, Your Honor. That's fine. My client denied that he talked to anybody in Macau. There were no reporters subscribed to the Macau stories. And the notion here, Your Honor, that there was some separate translation in Macau that somehow got translated back verbatim of what the Las Vegas Times article is, it's just preposterous. Was there anything in the Sun article other than the quote attributed to your client, which he denies making, although he admits it's true, anything else that was inaccurate? There were seven paragraphs in the article. Nothing else is contested. Two of the paragraphs, Your Honor, were paragraphs by Mr. Adelson's spokesman complaining about Mr. Hananel. I must not have asked the question very well. Other than the quotation attributed to your client, is there anything else in the article that your client contended was inaccurate? That subject did not come up at trial, Your Honor. As I said, two of the – But not what I asked you. My client did not make any statement at trial that anything else was inaccurate in the article, Your Honor. Thank you. Thank you. Now, none of the other articles that are now the subject of this appeal had anything to do with this statement. There is nothing the counsel can point to to suggest that there was anything in any other article that was defamatory. And indeed, as I stated, trial counsel agreed that at trial this should be limited to this one statement. But if he's making the same statement or there is evidence he made the same statement to other newspapers, wouldn't that make it more likely that he made this statement? If that were true. It's one thing to be misquoted once, but to be misquoted several times by several different newspapers in exactly the same way is less likely. But that is not what happened here, Your Honor. The only two other papers that they can cite to that had this statement were articles that came out two days later that if you look at page 10 of my brother's brief, he admits that they were verbatim republications. My client never spoke to them. There was no evidence of any reporters who wrote these articles from these other papers. He sort of waffled when I asked him the question, so I may have misunderstood what he said, but I thought he said they were not verbatim, they were similar. And so I'm not sure what he said. Just so it's clear here, Your Honor, what he said is that the English translations were verbatim. He said if you look at what was there in Macau, it's something different. So just pause at this for a moment, Your Honor. He's saying that my client spoke to people in Macau, it came out in Portuguese, and somehow it was translated back exactly as it appeared in the original Las Vegas Sun statement. That is just a preposterous representation. It would not have happened that way. Mr. Adelson had every right to subpoena people, other reporters. He actually tried to take depositions of other reporters, called out the depositions at the last moment. He could have gone to Macau to find out who was responsible. He offered no proof whatsoever that anybody heard my client make these statements. And there is no other publication that has anything like this statement. The other publications that he points to were publications that don't include this statement or anything like that. Turning to the second issue in the case and getting back to the questions that Judge Hawkins was asking me, under the Heming standards citing to the here decision from this Court, misconduct by trial counsel will only result in a new trial if misconduct sufficiently permeates an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict. That was not the case here, Your Honors. I referred to evidence. I referred to the affidavit of Moshe Hananel. I referred to Mr. Adelson's trial counsel's cross-examination of Moshe Hananel. This was all evidence. This was all relevant to the truth. Thank you, Your Honor. You have a minute and a half for rebuttal. Your Honors, Mr. Green now says that he was merely trying to preserve a record on appeal by asking the questions that he did or making the statements that he made. And that's not how you preserve a record on appeal. The way you preserve a record is the way that our trial counsel did, which is to decide the presence of the jury before you do something that is objectionable. You ask for permission, and if you're denied, you make your record. I would direct the Court to pages 117 and 118 of the excerpts of record, which is the This may well be annoying, and perhaps what counsel did, he could have done differently, and perhaps he stepped over the line. But we had a trial judge. We had a district judge. You could have asked for sanctions. You could have asked for a further cautionary instruction. I mean, there's lots of things that could have been done at trial to deal with the issue, and that trial judge did exercise his discretion. Isn't this all water under the bridge here? We did seek the instruction. It's at pages 90 and page 124. No, no. I understand you did, but that's why we have district judges to manage trials and exercise discretion. It's quite a bit to say that a judge who presides over a trial makes a ruling, and then the ruling isn't followed perhaps as well as it should have, you know, if he decides not to do anything further other than sustain objections, why isn't that the end of the matter? Well, this is also why we have appellate courts. The discretion is not unlimited. Judge Reed himself at pages 634 and 635 of the transcript recognized he said this is not simple. The trial got away from him. Unfortunately, Mr. Greene – He hasn't been managing trials probably for longer than you have. I'm sure that he has, and it is very clear that he was making – Not exactly a pussycat, in my experience. He made a good-faith effort to keep the parties in control, but Mr. Greene is no pussycat either. And in this case, unfortunately, the line was crossed sufficiently that the only remedy is a new trial. Fair enough. Thank you. The case is now able to stand for a minute.
judges: Kozinski, Hawkins, Gould